UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Evelyn Howard,<br><br>　　　　Plaintiff,<br><br>v.<br><br>United Collection Bureau, Inc.,<br><br>　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE MICHIGAN OCCUPATIONAL CODE AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Evelyn Howard ("Evelyn"), is a natural person who resided in Lincoln Park, Michigan, at all times relevant to this action.

2. Defendant, United Collection Bureau, Inc. ("UCB"), is an Ohio corporation that maintained its principal place of business in Toledo, Ohio, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act

-1-

("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Evelyn's claims under the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901, et seq., because those claims share a common nucleus of operative facts with Evelyn's claims under the TCPA. S*ee Litt v. Midland Credit Management, Inc.*, 2014 WL 1977137 (E.D. Mich. May 15, 2014) (in case based on debt collector's alleged violation of federal consumer protection statutes, supplemental jurisdiction exercised over claims under MOC).

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. Before UCB began contacting Evelyn, it and Evelyn had no prior business relationship and Evelyn had never provided express consent to UCB to be contacted on her cellular telephone.

7. UCB regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of UCB's revenue is debt collection.

9. UCB is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, UCB contacted Evelyn to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Evelyn is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Within the past twelve months, and before, UCB has been calling Evelyn on Evelyn's cellular phone ending in -8317 for the purpose of speaking with someone other than Evelyn.

14. Shortly after the calls began, Evelyn advised UCB that UCB called the wrong number.

15. In addition, Evelyn communicated her desire that UCB cease calling Evelyn.

16. In response, UCB told Evelyn that UCB would remove Evelyn's number.

17. Nevertheless, UCB continued to call Evelyn on Evelyn's cellular phone for the purpose of speaking with someone other than Evelyn.

18. On more than one occasion, Evelyn advised UCB that UCB called the wrong number and communicated Evelyn's desire that UCB cease calling Evelyn.

19. Regardless, a single conversation in which Evelyn conveyed this information should have sufficed for UCB to stop calling Evelyn.

20. UCB's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Evelyn.

21. UCB unreasonably relied upon inaccurate information provided to UCB by one (1) or more original creditors for whom UCB was attempting to collect a debt when UCB called Evelyn's cellular telephone.

22. UCB's policies and procedures violate the FDCPA.

23. UCB's collection efforts, including but not limited to its telephone calls, caused Evelyn emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

24. UCB's collection efforts also intruded upon Evelyn's privacy.

25. In addition, each time UCB placed a telephone call to Evelyn, UCB occupied Evelyn's telephone number such that Evelyn was unable to receive other phone calls at that telephone number while UCB was calling her.

26. UCB's telephone calls also forced Evelyn to lose time by having to tend to UCB's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

27. Evelyn re-alleges and incorporates by reference Paragraphs 6 through 26 above as if fully set forth herein.

28. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. &*

*Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

29. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

30. The likely effect of UCB's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Evelyn.

31. UCB violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Evelyn in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

32. Evelyn re-alleges and incorporates by reference Paragraphs 6 through 26 above as if fully set forth herein.

33. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256

F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

34. UCB's policies and procedures, as described in Paragraphs 20 through 21 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

35. UCB's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

36. Because UCB's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

37. UCB violated 15 U.S.C. § 1692d(5) by causing Evelyn's telephone to ring or engaging Evelyn in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Evelyn.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

38. Evelyn re-alleges and incorporates by reference Paragraphs 6 through 26 above as if fully set forth herein.

39. UCB violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

40. Evelyn re-alleges and incorporates by reference Paragraphs 6 through 26 above as if fully set forth herein.

41. UCB violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Telephone Consumer Protection Act

42. Evelyn re-alleges and incorporates by reference Paragraphs 13 through 26 above as if fully set forth herein.

43. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

    > Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

    137 Cong. Rec. 30,821 (1991).

44. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

45. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

46. A telephone dialing system with predictive dialer functionality is an ATDS

within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

47. UCB used a telephone dialing system with predictive dialer functionality to place calls to Evelyn on her cellular telephone.

48. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

49. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

50. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Sterling v. Mercantile Adjustment Bureau, LLC*, 2014 WL 1224604, *3 (W.D.N.Y. Nov. 22, 2013).

51. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72 (2015).

52. Evelyn was the "called party" in each telephone call UCB placed to Evelyn's cellular telephone.

53. UCB violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call

Evelyn on her cellular telephone without Evelyn's prior express consent or after such consent had been revoked.

54. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

55. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

56. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

57. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see

also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

58. UCB voluntarily placed telephone calls to Evelyn's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

59. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

60. UCB failed to adequately place intermittent live verification calls to Evelyn's cellular telephone number to ensure that Evelyn had provided her express consent to UCB to call those telephone numbers.

61. UCB's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT SIX

### Violations of the Michigan Occupational Code

62. Evelyn re-alleges and incorporates by reference Paragraphs 6 through 26 above as if fully set forth herein.

63. UCB is a "collection agency" as that term is defined in the MOC, Mich. Comp. Laws § 339.901(b).

64. Evelyn is a "consumer" as defined by the MOC and is a person whom the act was intended to protect, Mich. Comp. Laws § 339.901(f).

65. UCB attempted to collect a "debt" within the meaning of Mich. Comp. Laws § 339.901(a).

66. UCB willingly and knowingly violated Mich. Comp. Laws § 339.915(e) by making inaccurate, misleading, untrue, or deceptive statements and claims in communications to collect a debt.

67. UCB willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

68. UCB willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

69. UCB's willful violations of the MOC entitle Evelyn to a civil penalty of not less than three (3) times the actual damages he sustained as a result of UCB's violations of the MOC.

**JURY DEMAND**

70. Evelyn demands a trial by jury.

## **PRAYER FOR RELIEF**

71. Evelyn prays for the following relief:

    a. Judgment against UCB for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining UCB from placing further telephone calls to Evelyn's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    c. Judgment against UCB for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call UCB made in violation of the TCPA.

    d. Judgment against UCB for actual damages, statutory damages, costs and reasonable attorney's fees, plus a civil penalty of not less than three (3) times Evelyn's actual damages, pursuant to Mich. Comp. Laws § 339.916.

    e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: December 7, 2016        By:   /s/ Jeffrey S. Hyslip
                                                  Jeffrey S. Hyslip, Esq.
                                                  Hyslip & Taylor, LLC LPA
                                                  1100 W. Cermak Rd., Suite B410
                                                  Chicago, IL  60608
                                                  Phone: 312-380-6110
                                                  Fax: 312-361-3509
                                                  Email: jeffrey@lifetimedebtsolutions.com
                                                  Ohio Bar No. 0079315
                                                  One of Plaintiff's Attorneys